Eric Allen (#13486)
**ALLEN, MITCHELL & ALLEN PLLC**
2091 Murray Holladay Road, Suite 21
Salt Lake City, UT 84117
P: (801) 930-1117
F: (866) 777-0742
eric@allenlawyer.com

**MANATT, PHELPS & PHILLIPS**
CHRISTINE M. REILLY (*PHV* forthcoming)
E-mail: CReilly@manatt.com
ALEXANDRA KRASOVEC (*PHV* forthcoming)
E-mail: AKrasovec@manatt.com
KRISTIN E. HAULE (*PHV* forthcoming)
E-mail: KHaule@manatt.com
2049 Century Park East, Suite 1700
Los Angeles, California 90067
P: 310.312.4000
F: 310.312.4224

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **Quinn Harrison**, et al,<br><br>    Plaintiffs,<br><br>v.<br><br>**Porch.com Inc.,** a Delaware corporation;<br>**GoSmith Inc.** a Delaware corporation;<br>**Matthew Ehrlichman**, CEO and<br>co-founder of Porch.com Inc. and CEO of<br>GoSmith, Inc., in his individual capacity;<br>**Brenton Marrelli**, CEO and co-founder of<br>GoSmith Inc., in his individual capacity;<br>and **Darwin Widjaja,** CTO and co-founder<br>of GoSmith Inc. and VP of Porch.com Inc.,<br>in his individual capacity,<br><br>    Defendants. | Civil Case No.: 2:20-cv-00266-JNP<br><br>**MOTION BY DEFENDANTS<br>PORCH.COM INC., GOSMITH INC.,<br>MATTHEW EHRLICHMAN,<br>BRENTON MARRELLI, AND<br>DARWIN WIDJAJA TO DISMISS<br>PLAINTIFFS' COMPLAINT**<br><br>District Judge Jill N. Parrish |

Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6), Defendants, through

counsel, file this Motion to Dismiss Plaintiffs' Complaint. Plaintiffs respectfully request

this Court enter an order dismissing Plaintiffs' Complaint in this matter (Dkt. 2) with prejudice.

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................ 1

II.   RELEVANT FACTS ........................................................................... 3

III.  ARGUMENT ...................................................................................... 4

    A.    The Complaint Must Be Dismissed Under Rule 12(b)(1) Because
           Plaintiffs Lack Constitutional Standing ................................................ 4

          1.    Plaintiffs' Unsupported Approximation Of Over 22,000 TCPA
                 Violations Does Not Constitute a Concrete and Particularized
                 Injury In Fact ........................................................................ 4

          2.    Plaintiffs Have No Privacy Interest In Business Phone Numbers
                 They Publicized Online And Thus Mere Receipt of Calls Does Not
                 Constitute a Concrete Injury In Fact ......................................... 6

    B.    The Complaint Should Be Dismissed Under Rule 12(b)(6) Because
           Plaintiffs Lack Prudential Standing ..................................................... 9

    C.    This Court Lacks Personal Jurisdiction Over The Individual Defendants
           Ehrlichman, Marrelli, and Widjaja ................................................... 10

    D.    Alternatively, Plaintiffs' Claims Against the Individual Defendants Should
           Be Dismissed Pursuant to Fed ......................................................... 11

    E.    Plaintiffs Fail To State An ATDS Claim Under the TCPA ................................. 14

          1.    Employment Texts Do Not Constitute Advertisements or
                 Telemarketing Under The TCPA ................................................ 15

          2.    Plaintiffs Provided Consent By Publishing Their Phone Numbers
                 Online Expressly Inviting Calls For Work Opportunities ..................... 16

    F.    Plaintiffs Fail to Plead A Do-Not-Call Violation ................................................. 19

IV.  CONCLUSION ................................................................................. 22

# TABLE OF AUTHORITIES

**Page**

### CASES

*An Phan v. Agoda Co. Pte. Ltd.*,
    351 F. Supp. 3d 1257 (N.D. Cal. 2018) ................................................................16

*Ball v. Dillard*,
    2000 WL 33710848 (D. Utah May 26, 2000) (unpublished) ...........................12, 13

*Baltazar v. Premium Capital Funding*,
    2011 WL 3841450 (D. Utah Aug. 26, 2011) (unpublished)..............................5, 20

*Bank v. Indep. Energy Grp. LLC*,
    2015 WL 4488070 (E.D.N.Y. July 23, 2015) (unpublished)................................19

*Bank v. Simple Health Plans LLC*,
    2019 WL 7878570, (E.D.N.Y. Dec. 12, 2019), (unpublished).............................14

*Belstone Capital, LLC v. Bellstone Partners, LLC*,
    2017 WL 1153111 (E.D. Cal. Mar. 28, 2017) (unpublished)..............................13

*Beyer et. al. v. Porch.com Inc. et. al.*,
    No. 1:20-cv-00051 (D. Mont.)...............................................................................14

*Brereton v. Bountiful City Corp.*,
    434 F.3d 1213 (10th Cir. 2006) .............................................................................22

*Brown v. Herbert*,
    850 F. Supp. 2d 1240 (D. Utah 2012).......................................................................7

*Cain et. al. v. Porch.com Inc. et. al.*,
    No. 5:20-cv-00697-BLF (N.D. Cal.), Dkt. 1 (compl. filed Jan. 30, 2020), Dkt. 25 (am.
    compl. filed April 15, 2020) ...................................................................1, 4, 20

*Canter & Assocs., LLC v. Teachscape, Inc.*,
    2007 WL 4365480 (N.D. Cal. Dec. 12, 2007) (unpublished)...........................5, 21

*CE Design Ltd. v. King Architectural Metals, Inc.*,
    637 F.3d 721 (7th Cir. 2011) .................................................................................18

*Chennette et. al. v. Porch.com Inc. et. al.*,
    No. 1:20-cv-00201 (D. Id.) .....................................................................................14

*City Select Auto Sales Inc. v. David Randall Assocs., Inc.*,
    885 F.3d 154 (3d Cir. 2018)...........................................................................11, 12

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)..................................................................................................4

*Clements et. al. v. Porch et. al.*,
    No. 1:20-cv-00003 (D. Ak.).....................................................................................14

*Cunningham v. Capital Advance Sols., LLC*,
    2018 WL 6061405 (D.N.J. Nov. 20, 2018) (unpublished) ...................................13

# TABLE OF AUTHORITIES
(continued)

**Page**

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014).................................................................................10

*Dawson et. al. v. Porch.com Inc. et. al.*,
   No. 2:20-cv-00604 (W.D. Wash.)..........................................................14

*Dolemba v. Illinois Farmers Ins. Co.*,
   2015 WL 4727331 (N.D. Ill. Aug. 10, 2015) (unpublished) ...........................15, 16

*Dolemba v. Kelly Svcs., Inc.*,
   2017 WL 429572 (N.D. Ill. Aug. 10, 2015) (unpublished) ...............................16, 18

*Dowells et. al. v. Porch.com Inc. et. al.*,
   No. 1:20-cv-00192 (D. Hi.)...................................................................14

*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*,
   514 F.3d 1063 (10th Cir. 2008) ..............................................................11

*Eames v. Executive Office of the President*,
   2015 WL 1442581 (D. Utah) (unpublished).................................................9

*Edelsberg v. Vroom, Inc.*,
   2018 WL 1509135 (S.D. Fla. Mar. 27, 2018) (unpublished)...........................17, 18

*Exec. Boat & Yacht Brokerage v. Aramark Sports & Entm't Servs., Inc.*,
   2008 WL 4279646 (D. Utah Sept. 12, 2008) (unpublished)................................7

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*,
   2017 WL 4224723 (N.D. Cal. Sept. 22, 2017) (unpublished) ..............................5

*Freyja v. Dun & Bradstreet, Inc.*,
   2015 WL 6163590 (C.D. Cal. Oct. 14, 2015) (unpublished)..............................22

*Friedman v. Torchmark Corp.*,
   2013 WL 1629084 (S.D. Cal. Apr. 16, 2013) (unpublished)..............................15

*Gerrard v. Acara Solutions Inc.*,
   2020 WL 3525949 (W.D.N.Y. Jun. 30, 2020) (unpublished) .............................15

*Greer v. Herbert*,
   No. 2018 WL 2122856 (D. Utah May 8, 2018) (unpublished), *aff'd*, 768 F. App'x 787
   (10th Cir. 2019)...................................................................................9

*Hall v. Bellmon*,
   935 F.2d 1106 (10th Cir.1991) ...............................................................22

*Harrison et. al. v. Porch.com Inc. et. al.*,
   No. 2:20-cv-00266 (D. Ut.)....................................................................14

*Hemisphere Mgmt., LLC v. ComputerEase Software, Inc.*,
   2006 WL 3457212 (D. Utah Nov. 16, 2006) (unpublished)..............................10

*Herrera v. Las Cruces Pub. Sch.*,
   695 F. App'x 361 (10th Cir. 2017)............................................................7

# TABLE OF AUTHORITIES
(continued)

**Page**

*Holt v. U.S.*,
46 F.3d 1000 (10th Cir. 1995) ...................................................................................7

*Hulsey v. Peddle, LLC*,
2017 WL 8180583 (C.D. Cal. Oct. 23, 2017) (unpublished)..................................22

*In re Matter of Groupme, Inc./Skype Commc'ns S.A.R.l Petition for Expedited Declaratory Ruling Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
29 F.C.C. Rcd. 3442 (2014) ........................................................................9, 17, 18

*In re Rules & Regs. Implementing the Tel. Consum. Prot. Act of 1991*,
21 FCC Rcd. 3787 (Apr. 6, 2006).............................................................................16

*In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014 (July 3, 2003) ..........................................................................19

*In re Rules and Regulations Implementing the TCPA of 1991*,
23 FCC Rcd. 9779 (June 17, 2008)...........................................................................19

*In the Matter of Rules and Regulations Implementing the Tel. Consumer Protec. Act of 1991*,
7 F.C.C. Rcd. 8752 (Oct. 16, 1992) .........................................................................17

*Karacand v. Edwards*,
53 F. Supp. 2d 1236 (D. Utah 1999)........................................................................13

*KHS Corp. v. Singer Fin. Corp.*,
376 F. Supp. 3d 524 (E.D. Pa. 2019) .......................................................................12

*Krogh v. Nielsen*,
2012 WL 6115649 (D. Utah Dec. 10, 2012) (unpublished) ....................................11

*Legg v. PTZ Ins. Agency, Ltd.*,
321 F.R.D. 572 (N.D. Ill. 2017)................................................................................8

*Lobato v. Pay Less Drug Stores, Inc.*,
261 F.2d 406 (10th Cir. 1958) ..................................................................................12

*Longo et. al. v. Porch.com Inc. et. al.*,
No. 3:20-cv-00585 (D. Con.).....................................................................................14

*Lutz Appellate Svcs., Inc. v. Curry*,
859 F. Supp. 180 (E.D. Pa. 1994) ............................................................................15

*MacKinnon v. Hof's Hut Restaurants, Inc.*,
2017 WL 5754308 (E.D. Cal. Nov. 28, 2017) (unpublished).................................22

*Mais v. Gulf Coast Collection Bureau, Inc.*,
2013 WL 1283885 (S.D. Fla. Mar. 27, 2013) (unpublished)............................12, 13

*Makowski v. First Nat. of Nebraska*,
2013 WL 754779 (D. Colo. Feb. 27, 2013) (unpublished)........................................8

iv

## TABLE OF AUTHORITIES
(continued)

**Page**

*Makowski v. First Nat. of Nebraska, Inc.*,
  2013 WL 754922 (D. Colo. Feb. 6, 2013) (unpublished) ..............................................2, 8, 19

*Mattson v. New Penn Financial, LLC*,
  2019 WL 7633159 (D. Or. Nov. 7, 2019) (unpublished) ......................................................19

*Mattson v. Quicken Loans Inc.*,
  2019 WL 7630856 (D. Or. Nov. 7, 2019) (unpublished) ......................................................19

*Mey v. Pep Boys-Manny, Moe, & Jack*,
  228 W. Va. 48 (2011) ..........................................................................................................18

*Meyer v. Portfolio Recovery Assocs., LLC*,
  707 F.3d 1036 (9th Cir. 2012) .............................................................................................14

*Mims v. Arrow Fin. Servs., LLC*,
  565 U.S. 368 (2012)..............................................................................................................16

*Mohon v. Agentra LLC*,
  400 F. Supp. 3d 1189 (D.N.M. 2019) ....................................................................................9

*Monarch Health Scis., Inc. v. Amazon Thunder, Inc.*,
  2007 WL 3549434 (D. Utah Nov. 15, 2007) (unpublished)..................................................10

*Moskowitz v. Am. Savings Bank, F.S.B.*,
  2020 WL 61576 (D. Hi. Jan. 6, 2020) (unpublished) ..........................................................17

*Murphy v. DCI Biologicals Orlando, LLC*,
  2013 WL 6865772 (M.D. Fla. Dec. 31, 2013) (unpublished), *aff'd*, 797 F.3d 1302
  (11th Cir. 2015)....................................................................................................................21

*Nieblas et. al. v. Porch.com Inc. et. al.*,
  No. 4:20-cv-00171 (D. Az.).................................................................................................14

*Nieblas et. al. v. Porch.com Inc. et. al*,
  No. 4:20-cv-00171-EJM (D. Az.) .........................................................................................1

*O'Toole v. Northrop Grumman Corp.*,
  499 F.3d 1218 (10th Cir. 2007) .............................................................................................7

*Operational Risk Mgmt. LLC v. Union Bank, N.A.*,
  2012 WL 1710893 (N.D. Cal. May 15, 2012) (unpublished)...........................................5, 21

*Orea v. Nielsen Audio, Inc.*,
  2015 WL 1885936 (N.D. Cal. Apr. 24, 2015) (unpublished)................................................22

*Patrick v. N & G Capital LLC*,
  2014 WL 3547831 (D. Utah July 17, 2014) (unpublished) ..................................................11

*Payton v. Kale Realty, LLC*,
  164 F. Supp. 3d 1050 (N.D. Ill. 2016) .................................................................................16

*Pearson et. al. v. Porch.com Inc. et. al.*,
  No. 3:20-cv-00697 (D. Or.) .................................................................................................14

# TABLE OF AUTHORITIES
(continued)

**Page**

*Pinkard v. Wal-Mart Stores, Inc.*,
  2012 WL 5511039 (N.D. Ala. Nov. 9, 2012) (unpublished) ......................................17, 18, 22

*Reardon v. Uber Technologies, Inc.*,
  115 F. Supp. 3d 1090 (N.D. Cal. 2015) ................................................................15, 16, 17, 18

*Roberts v. Am.*
  *'s Wholesale Lender*, 2012 WL 1379203 (D. Utah Mar. 22, 2012), *report and
  recommendation adopted*, 2012 WL 1390188 (D. Utah Apr. 18, 2012), *aff'd*, 525 F.
  App'x 675 (10th Cir. 2013) (unpublished) .............................................................................7

*Rotberg v. Jos. A. Bank Clothiers, Inc.*,
  345 F. Supp. 3d 466 (S.D.N.Y. 2018)......................................................................................6

*Salmon v. CRST Expedited, Inc.*,
  2015 WL 1395237 (N.D. Okla. Mar. 25, 2015) (unpublished) ..............................8, 15, 18, 22

*Sartori v. Susan C. Little & Assocs., P.A.*,
  2013 WL 11792151 (D.N.M. June 27, 2013) (unpublished), report and
  recommendation adopted, 2013 WL 4401370 (D.N.M. July 30, 2013) (unpublished),
  *aff'd*, 571 F. App'x 677 (10th Cir. 2014)...............................................................................17

*Satterfield v. Simon & Schuster, Inc.*,
  569 F.3d 946 (9th Cir. 2009) ...................................................................................................9

*Savanna Grp., Inc. v. Trynex, Inc.*,
  2013 WL 4734004 (N.D. Ill. Sept. 3, 2013) (unpublished) ...................................................12

*Schmier v. U.S. Court of Appeals for Ninth Circuit*,
  279 F. 3d 817 (9th Cir. 2002) ................................................................................................13

*Seale/Coleman v. Porch.com Inc. et. al.*,
  No. 5:19-cv-08389-BLF (N.D. Cal.), Dkt. 2 (verified compl. filed Dec. 26, 2019)..................1

*Selby v. Ocwen Loan Servicing, LLC*,
  2017 WL 5495095 (S.D. Cal. Nov. 16, 2017) (unpublished)...............................................6, 8

*Sepehry-Fard v. MB Fin. Servs.*,
  2014 WL 2191994 (N.D. Ca. May 23, 2014) (Freeman, J.) (unpublished)..............................5

*Shrader v. Biddinger*,
  633 F.3d 1235 (10th Cir. 2011) ..............................................................................................10

*Southwell v. Mortg. Inv'rs Corp. of Ohio*,
  2014 WL 3956699 (W.D. Wash. Aug. 12, 2014) (unpublished)............................................19

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016)...............................................................................................4, 5, 8

*Stoops v. Wells Fargo Bank, N.A.*,
  197 F. Supp. 3d 782 (W.D. Pa. 2016)..............................................................................7, 8, 9

## TABLE OF AUTHORITIES
(continued)

**Page**

*Syms et. al. v. Porch.com Inc. et. al.*,
  No. 2:20-cv-00162 (E.D. Wash.) ............................................14

*Tal v. Hogan*,
  453 F.3d 1244 (10th Cir. 2006) .............................................7

*Tel. Sci. Corp. v. Asset Recovery Sols., LLC*,
  2016 WL 4179150 (N.D. Ill. Aug. 8, 2016) (unpublished) ....................9

*Van Patten v. Vertical Fitness Grp., LLC*,
  847 F.3d 1037 (9th Cir. 2017) .....................................6, 7, 9, 17

*Vawter et. al. v. Porch.com Inc. et. al.*,
  No. 2:20-cv-00752 (D. Nv.).................................................14

*VDARE Found. v. City of Colorado Springs*,
  2020 WL 1482622 (D. Colo. Mar. 27, 2020) (unpublished) ...............5, 21

*Verco Decking, Inc. v. Consol. Sys., Inc.*,
  2013 WL 6844106 (D. Ariz. Dec. 23, 2013) (unpublished) ...................21

*VidAngel, Inc. v. Sullivan Entm't Grp., Inc.*,
  2018 WL 3611068 (D. Utah July 27, 2018) (unpublished) ...............10, 11

*VR Acquisitions, LLC v. Wasatch Cty.*,
  853 F.3d 1142 (10th Cir. 2017) ...........................................9

*Winner v. Kohl's Dep't Stores, Inc.*,
  2017 WL 3535038 (E.D. Pa. Aug. 17, 2017) (unpublished) ...................8

*XY Skin Care & Cosmetics, LLC v. Hugo Boss USA, Inc.*,
  2009 WL 2382998 (D. Ariz. Aug. 4, 2009) (unpublished)....................20

*Zelma v. Penn LLC*,
  2020 WL 278763 (D.N.J. Jan. 17, 2020) (unpublished).......................14

## STATUTES

47 U.S.C. §227(b) ..........................................................3, 14

47 U.S.C. § 227(b)(1)(A)(iii)................................................16

47 U.S.C. §227(c) ..........................................................3, 22

47 U.S.C. § 227(c)(5).......................................................19

Telephone Consumer Protection Act ....................................... passim

## RULES AND REGULATIONS

47 C.F.R. § 64.1200(c)(2)................................................19, 21

47 C.F. R. § 64.1200(f)(1) ..................................................15

47 C.F.R. § 64.1200(f)(12) ..................................................15

## TABLE OF AUTHORITIES
(continued)

**Page**

47 C.F.R. § 64.1200(f)(14) ............................................................................................21

Fed. R. Civ. P. 12(b)(1).............................................................................................2, 4

Fed. R. Civ. P. 12(b)(2)................................................................................................2

Fed. R. Civ. P. 12(b)(6)........................................................................................ passim

Fed. R. Civ. P. 12(f).................................................................................................20

Fed. R. Evid. 201(b)....................................................................................................7

Fed. R. Evid. 201(c).....................................................................................................7

## OTHER AUTHORITIES

H.R. Rep. 102-317 (1991)...........................................................................................17

S.Rep. No. 102–178 (1991) ..........................................................................................9

## MEMORANDUM

### I.    INTRODUCTION

This is the **sixth** complaint in a series of complaints filed by Plaintiffs' counsel against Defendants attempting to satisfy the pleading requirements for their clients' claims under the Telephone Consumer Protection Act ("TCPA").[1]  But despite the benefit of full briefing on Defendants' Motion to Dismiss both the original **and** amended complaints in two prior cases, Plaintiffs still fail to remedy the deficiencies of their pleadings.

Plaintiffs are business owners who, hoping to drum up new business opportunities, advertise their cell phone numbers online in connection with their respective businesses and actively solicit third parties to contact them at those numbers concerning potential jobs.  For example, Plaintiff Quinn Harrison ("Harrison") prominently advertises the phone number at issue in this lawsuit as the contact number for his construction business, DQ Construction, LLC, throughout his business Facebook page.  It is also the contact number provided in public listings for his business with the Better Business Bureau.  Similarly, Plaintiff David Dunn ("Dunn") lists his phone number on the website for his window cleaning business, 20/20 Window Cleaning, business imploring the public to "**Contact Us**" at the phone number provided.  It is also the number listed in the yellow pages for his business.  Indeed, all of the 87 Plaintiffs in this case are business owners who allegedly received autodialed text messages regarding potential job opportunities in response to their similar online solicitations.  Yet despite receiving *precisely what they wanted*, Plaintiffs now attempt to assert claims for violations of the TCPA.  Plaintiffs' Complaint alleges, in conclusory fashion and without supporting facts, that the texts at issue violated the TCPA and invaded their privacy.  Plaintiffs cannot have it both ways.  The Complaint is ripe for dismissal.

As demonstrated below, this lawsuit cannot proceed for several reasons:

---

[1] *See Seale/Coleman v. Porch.com Inc. et. al.*, No. 5:19-cv-08389-BLF (N.D. Cal.), Dkt. 2 (verified compl. filed Dec. 26, 2019); Dkt. 25 (proposed am. compl. filed March 30, 2020); *Cain et. al. v. Porch.com Inc. et. al.*, No. 5:20-cv-00697-BLF (N.D. Cal.), Dkt. 1 (compl. filed Jan. 30, 2020), Dkt. 25 (am. compl. filed April 15, 2020); *Nieblas et. al. v. Porch.com Inc. et. al*, No. 4:20-cv-00171-EJM (D. Az.).

**First**, the Court must dismiss the Complaint under Rule 12(b)(1) for lack of subject matter jurisdiction because Plaintiffs lack a concrete "injury in fact" to establish Article III standing because (1) their unsupported approximation of over 22,000 TCPA violations does not constitute a concrete injury in fact as to each of them; and (2) they have no privacy interest in business phone numbers they publicized online to solicit business inquiries. The Court should also dismiss the Complaint under Rule 12(b)(6) for lack of prudential standing because the purpose behind the relevant sections of the TCPA is to protect ***consumers*** from ***unsolicited telemarketing*** calls and texts, and as business owners who solicited calls, Plaintiffs are not within the "zone of interests" that these TCPA provisions were designed to protect.

**Second**, the Complaint should be dismissed as to Individual Defendants Ehrlichman, Marrelli, and Widjaja for lack of personal jurisdiction under Rule 12(b)(2) because they are not domiciled in Utah and Plaintiffs have not alleged ***any*** conduct they personally engaged in, much less personally directed, toward Utah.

**Third**, the Court should dismiss the Complaint as to the three individually-named defendants pursuant to Rule 12(b)(6) because Plaintiffs provide no *facts* suggesting they were personally involved in sending the text messages at issue. Contrary to well-established law, Plaintiffs instead seek to hold these defendants personally liable simply on account of their positions as corporate officers.

**Fourth**, Plaintiffs' TCPA claims also fail because Plaintiffs expressly consented to receiving the texts about which they now complain by publishing their mobile numbers on the internet in connection with their respective businesses and soliciting third parties to contact them at those numbers about job opportunities.

**Lastly**, Plaintiffs' DNC claims fail because: (i) the National DNC rules do not apply to business phone numbers; (ii) the Complaint assumes, but does not actually allege, that ***any*** of the 87 Plaintiffs received more than one telephone solicitation within twelve months after registering their number on the National DNC Registry; (iii) the Complaint does not allege that each Plaintiff,

respectively, was the one to register their number on the DNC; and (iv) the texts were job opportunities, not "telephone solicitations".

## II.    <u>RELEVANT FACTS</u>

In this lawsuit, 87 named Plaintiffs have sued Porch, GoSmith, and three corporate officers (one from Porch and two from GoSmith) alleging violations of the TCPA's automated calling restrictions (*i.e.*, 47 U.S.C. §227(b)) and National DNC Registry rules (*i.e.*, 47 U.S.C. §227(c)) on the basis of purported "telemarketing" text messages that they claim Defendants sent without consent. Compl. at Intro. & ¶¶ 9, 31, 35, 41, 44-48, 50.d., 54-55, Ex. A. Plaintiffs seek to hold the three named individuals personally liable for these alleged violations solely because they are corporate officers, but allege no facts connecting them personally to any of the alleged conduct. *See, e.g., id.* ¶¶ 37-41; 43-45.

Despite Plaintiffs' characterization, the texts were neither telemarketing nor an unsolicited invasion of privacy. Rather, as Plaintiffs readily admit, the phone numbers in question are the main contact numbers for their respective businesses. *See* Compl. ¶ 11. Plaintiffs advertised their mobile numbers online in association with their respective businesses and actively invited third parties to call and text them. As the allegations make clear, the texts at issue were sent in response to those solicitations. For example, Plaintiff Harrison resides in Salt Lake County, Utah, where he owns and operates a construction business called DQ Construction, LLC, located in Sandy, Utah. *See* Declaration of Kristin E. Haule, ("Haule Decl."), ¶¶ 2-5 and Exs. 1-4 thereto (Sandy is located within Salt Lake County, Utah). The phone number in question is advertised throughout his business Facebook webpage, and is listed as the contact number for his business with the Utah Division of Corporations and with the Better Business Bureau. *See* Haule Decl. at ¶¶ 2-4 and Exs. 1-3 thereto. Similarly, Plaintiff Dunn resides in Salt Lake County, Utah, where he runs and operates a window cleaning business, 20/20 Window Cleaning. *See* Haule Decl. at ¶¶ 6-7 and Exs. 5-6 thereto. His phone number is listed on his business website, including under the phrase "**Contact Us.**" *See* Haule Decl. at ¶ 6 and Ex. 5 thereto. It is also listed as the contact number for

his business in the yellow pages.  *See* Haule Decl. at ¶ 7 and Ex. 6 thereto.

In response to these **express** invitations, Plaintiffs allegedly received text messages regarding job opportunities for their businesses.  *See* Comp. ¶ 21 (text offering Dunn "1st priority" on a job in North Salt Lake, UT); *see also* Compl. ¶¶ 24-25 (other text messages offering job opportunities).[2]

Although the Complaint refers to these messages as "telemarketing" (Compl. ¶ 31), it is evident that these are job opportunities sent in response to Plaintiffs' online solicitations, and appointment transactions.  *Id.* ¶ 21; *see also id.* ¶¶ 24-25.

## III.    ARGUMENT

### A.    The Complaint Must Be Dismissed Under Rule 12(b)(1) Because Plaintiffs Lack Constitutional Standing.

To begin, the Complaint must be dismissed under Rule 12(b)(1) for lack of constitutional standing.  Article III requires, among other things, that each plaintiff must allege an "injury in fact."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409-10 (2013).  The injury must be both "concrete and particularized."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1545 (2016).  Each Plaintiff failed to do so here.

#### 1.    Plaintiffs' Unsupported Approximation Of Over 22,000 TCPA Violations Does Not Constitute a Concrete and Particularized Injury In Fact.

Plaintiffs are individually named, so each separately bears the burden of establishing a "concrete and particularized" injury.  *See, e.g., Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 2017 WL 4224723 (N.D. Cal. Sept. 22, 2017) (unpublished) (noting that unlike class actions, each

---

[2] The single message to Dunn alleged in para. 21 of the Complaint is actually the only alleged text message relevant to this lawsuit.  Although plaintiffs included screenshots of other text messages (*see* Compl. ¶¶ 24-25), those messages do not pertain to any plaintiff in this action.  These messages were included in all 13 lawsuits Plaintiffs' counsel has filed against Defendants, and were previously identified as belonging to plaintiffs in the *Cain* matter.  *See Cain* Dkt. 1 ¶¶ 12, 20 (identifying the text messages as being sent to William Cain, Gabe Nuñez, Armando Crespin, and Randy Landman, plaintiffs in the *Cain* lawsuit).  And although the text messages alleged in paragraph 25 appear to pertain to a contractor in Utah, Plaintiffs do not identify who those messages were sent to or whether the recipient is a plaintiff in this action.

plaintiff in a mass tort action is a real party in interest); *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016), as revised (May 24, 2016) ("To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized'"). Plaintiffs seek to satisfy this requirement by pointing to the aggregate number of texts alleged. But contrary to Plaintiffs' contention, they have not pled facts supporting their allegation that GoSmith sent over 22,000 text messages in violation of the TCPA, let alone that each Plaintiff received such texts. *See* Compl. ¶¶ 10-11 and Ex. A attached thereto. Indeed, Plaintiffs plainly admit that this figure has been pulled out of thin air. *See* Compl. Ex. A "Legend" (explaining that Plaintiffs reached that figure by arbitrarily multiplying the number of weeks that passed by two, assuming without explanation that each Plaintiff received two texts every week). The Court need not accept these figures or Exhibit A as true, as they are based purely on speculation. *See Baltazar v. Premium Capital Funding*, 2011 WL 3841450, at *3 (D. Utah Aug. 26, 2011) (unpublished) (dismissing complaint where "[p]laintiffs' conclusory allegations and hypothetical surmisings fail[ed] to meet [the pleading] standard."); *Sepehry-Fard v. MB Fin. Servs.*, 2014 WL 2191994, at *2 (N.D. Ca. May 23, 2014) (Freeman, J.) (unpublished) (dismissing complaint alleging that Plaintiff received "14 such calls per week for a period approximately 3 months" where Plaintiff did not "describe the date, timing, or specific content of any of these calls, or why he believes that they were artificial or prerecorded").[3] Exhibit A cannot and does not establish concrete and particularized injury for any Plaintiff in this case.

---

[3] *See also VDARE Found. v. City of Colorado Springs*, 2020 WL 1482622, at *11 (D. Colo. Mar. 27, 2020) (unpublished) (dismissing where allegations were speculative and "based on hypothetical events" which were "insufficient to support a plausible claim for relief"); *Canter & Assocs., LLC v. Teachscape, Inc.*, 2007 WL 4365480, at *2 (N.D. Cal. Dec. 12, 2007) (unpublished) (a guess is insufficient to state a cognizable claim); *Operational Risk Mgmt. LLC v. Union Bank, N.A.*, 2012 WL 1710893, at *2 (N.D. Cal. May 15, 2012) (unpublished) (hypothetical allegations remain at the speculative level, which are insufficient for pleading purposes).

2.    **Plaintiffs Have No Privacy Interest In Business Phone Numbers They Publicized Online And Thus Mere Receipt of Calls Does Not Constitute a Concrete Injury In Fact.**

"The TCPA establishes the substantive right to be free from certain types of phone calls and texts **absent consent.**" *Van Patten v. Vertical Fitness Grp., LLC,* 847 F.3d 1037, 1043 (9th Cir. 2017) (emphasis added, citations omitted).  In enacting the TCPA, "Congress sought to protect consumers from the **unwanted** intrusion and nuisance of **unsolicited** telemarketing phone calls and fax advertisements" and noted "**[u]nsolicited** telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients" and thus are "a concrete injury in fact sufficient to confer Article III standing." *Id.*  But *Van Patten* "did **not** hold that receipt of **any** call [or text message] satisfies the concrete injury in fact requirement for standing to assert TCPA claims," instead focusing only on **unwanted** and **unsolicited** telemarketing calls and text messages. *Selby v. Ocwen Loan Servicing, LLC*, 2017 WL 5495095, at \*3 (S.D. Cal. Nov. 16, 2017) (unpublished) (emphasis added). *see also Rotberg v. Jos. A. Bank Clothiers, Inc.*, 345 F. Supp. 3d 466, 474 (S.D.N.Y. 2018) ("[W]hen choosing what class of unwanted phone messages to regulate, Congress did not make the scope of civil liability coextensive with **all** unwanted phone messages.") (emphasis added).

In this case, Plaintiffs do not allege any economic injury.  *See generally* Compl.  Moreover, Plaintiffs' conclusory statements that the alleged text messages invaded Plaintiffs' privacy and that mere "receipt of a telemarketing or unsolicited call 'demonstrates more than a bare violation and satisfies the concrete-injury requirement for standing'" do not make it so.  *See* Compl. ¶¶ 57, 90.  As *Van Patten* explains, "Congress made specific findings that 'unrestricted telemarketing **_can be_** an intrusive invasion of privacy' …." 847 F.3d 1037, 1043 (9th Cir. 2017) (citing Pub. L. 102-243 § 2, ¶¶ 5, 10, 12, 13, 105 Stat. 2394 (1991)) (emphasis added).  Thus, it is **not** the case that any and every telephone call and text message is a per se invasion of privacy.  Indeed, only "**[u]nsolicited** telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients." *Id.* at 1043 (emphasis added). *see also Stoops v. Wells*

*Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 800 (W.D. Pa. 2016) (calls invited by the plaintiff "are not a nuisance and an invasion of privacy.").

Plaintiffs have not—and indeed cannot—establish an injury-in-fact because the text messages at issue were neither unwanted nor telemarketing.  Rather, **Plaintiffs actively invited the public to contact them about job opportunities by voluntarily posting their mobile phone numbers online in connection with their businesses and by soliciting business inquiries to these phone numbers.**  Indeed, both Harrison and Dunn publicly posted their respective phone numbers on each of their business webpages, imploring the public to contact them.  *See* Haule Decl. at ¶¶ 2, 6 and Exs. 1, 5.  In response, Plaintiff Dunn allegedly received a text message offering him first priority for a nearby job.  *See* Haule Decl. at ¶¶ 6-7 and Ex. 5-6; Compl. ¶ 21.  *See generally Brown v. Herbert*, 850 F. Supp. 2d 1240, 1245 (D. Utah 2012) (quoting *Holt v. U.S.*, 46 F.3d 1000, 1002–03 (10th Cir. 1995) ("When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations" and "has wide discretion to allow affidavits" and other documents); *see also Herrera v. Las Cruces Pub. Sch.*, 695 F. App'x 361, 367 (10th Cir. 2017) (same).[4]  By publicizing their phone numbers

---

[4] Defendants request judicial notice of the webpages and other publicly available information attached as exhibits to the Haule Decl. filed concurrently herewith.  Federal Rule of Evidence 201(b) permits judicial notice of any "fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  A court "may take judicial notice on its own" and "must take judicial notice if a party requests it and the court is supplied with the necessary information."  Fed. R. Evid. 201(c).  Further, it is well accepted that federal courts may properly consider facts subject to judicial notice in deciding Rule 12(b)(6) motions. *See, e.g.*, *Tal v. Hogan*, 453 F.3d 1244, 1265 (10th Cir. 2006) ("[F]acts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment."); *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007) ("It is not uncommon for courts to take judicial notice of factual information found on the world wide web."); *Exec. Boat & Yacht Brokerage v. Aramark Sports & Entm't Servs., Inc.*, 2008 WL 4279646, at *4 (D. Utah Sept. 12, 2008) (unpublished) (taking judicial notice of information contained on a website).  Judicial notice of company formation records is also common. *See, e.g.*, *Roberts v. Am.'s Wholesale Lender*, 2012 WL 1379203, at *6 (D. Utah Mar. 22, 2012), *report and recommendation adopted*, 2012 WL 1390188 (D. Utah Apr. 18, 2012), *aff'd*, 525 F. App'x 675 (10th Cir. 2013) (unpublished) (taking judicial notice of corporate records).

online in connection with their respective businesses, Plaintiffs have disclaimed any privacy interest in those numbers for TCPA purposes.

In short, based on the few examples Plaintiffs cherry-picked to include in their Complaint, it is apparent that Plaintiffs received exactly what they asked for—text messages concerning potential work for their businesses. *See* Haule Decl. at ¶¶ 2-4, 5-8 and Ex. 7 (spreadsheet showing Plaintiffs' name, business name, and business website). Accordingly, the text messages were neither unwanted nor unsolicited. Further, as shown below, the alleged messages do not constitute telemarketing or advertisements under the TCPA. *See* discussion at pp. 18-19, *infra* (explaining that calls about job opportunities are not telemarketing or advertisements under the TCPA, even if they require the plaintiff to expend money). Thus, Plaintiffs cannot plausibly allege that they were injured or that the texts they received led to any intangible injuries (*i.e.*, an unwanted invasion of privacy or nuisance) against which the TCPA was designed to protect ***as they requested those very contacts***. Thus, the Complaint must be dismissed for lack of Article III standing.[5]

## B.   The Complaint Should Be Dismissed Under Rule 12(b)(6) Because Plaintiffs Lack Prudential Standing.

It is apparent that Plaintiffs are not within the "zone of interests" the TCPA was designed

---

[5] *See, e.g.*, *Winner v. Kohl's Dep't Stores, Inc.*, 2017 WL 3535038, at *6 (E.D. Pa. Aug. 17, 2017) (unpublished) (holding that "[b]ecause they consented to receiving the texts, Plaintiffs can show no concrete and particularized injury-in-fact and thus have not established that they have [Article III] standing to pursue the [TCPA] claims asserted"); *Selby*, 2017 WL 5495095, at *3 (unpublished) (dismissing for lack of Article III standing where the calls at issue were not unsolicited telemarketing); *see also Legg v. PTZ Ins. Agency, Ltd.*, 321 F.R.D. 572, 577 (N.D. Ill. 2017) (applying *Spokeo* and noting that "if [a plaintiff] has expressly agreed and expected to receive calls from defendant, and did receive those calls, [plaintiff] has not been injured in any way"); *Salmon*, 2015 WL 1395237, at *7 (unpublished) (granting summary judgment for defendant on invasion of privacy claim where plaintiff "admits he voluntarily provided his contact information" and "should have expected to receive calls"); *Makowski v. First Nat. of Nebraska, Inc.*, 2013 WL 754922, at *9 (D. Colo. Feb. 6, 2013) (unpublished), report and rec. adopted sub nom. *Makowski v. First Nat. of Nebraska*, 2013 WL 754779 (D. Colo. Feb. 27, 2013) (unpublished) (dismissing intrusion of seclusion claim where there was "no factual support" demonstrating that the calls were unwanted); *Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 798-801 (W.D. Pa. 2016) (no injury-in-fact where calls at issue not unwanted).

to protect and thus, they also lack prudential standing. *See Lexmark*, 572 U.S. at 125-29; *see also Eames v. Executive Office of the President*, 2015 WL 1442581, at *3 (D. Utah) (unpublished); *Greer v. Herbert*, No. 2018 WL 2122856, at *5 (D. Utah May 8, 2018) (unpublished), *aff'd*, 768 F. App'x 787 (10th Cir. 2019). Federal pleadings are subject to dismissal under Rule 12(b)(6) for failure to state a claim where the plaintiff lacks prudential standing. *See VR Acquisitions, LLC v. Wasatch Cty.*, 853 F.3d 1142, 1147 n.4 (10th Cir. 2017).

Congress enacted the TCPA to safeguard consumer privacy and protect **consumers** from **unwanted** and **unsolicited** calls and texts. *See Mohon v. Agentra LLC*, 400 F. Supp. 3d 1189, 1234 (D.N.M. 2019) (recognizing TCPA's purpose of reducing **unwanted** telephone solicitations) (emphasis added); *Van Patten*, 847 F.3d at 1043; *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) ("The TCPA was enacted to "protect the privacy interests of **residential** telephone subscribers by placing restrictions on **unsolicited**, automated telephone calls to the **home**….") (quoting S.Rep. No. 102–178, at 1 (1991)) (emphasis added).

Here, Plaintiffs not only wanted to receive the texts, but they were not being contacted as residential consumers; rather, Plaintiffs are business owners who were contacted at their business numbers about business opportunities they themselves requested. *See* Compl. ¶ 11 (admitting the telephone numbers at issue are used in connection with Plaintiffs' businesses). Thus, Plaintiffs are not within the TCPA's "zone of interests." *See, e.g.*, *Stoops*, 197 F. Supp. 3d at 803 ("Even if, assuming arguendo, [p]laintiff had suffered an injury-in-fact, [p]laintiff would still lack standing because she does not have prudential standing.") (citation omitted); *Tel. Sci. Corp. v. Asset Recovery Sols., LLC*, 2016 WL 4179150, at *16 (N.D. Ill. Aug. 8, 2016) (unpublished) (no prudential standing where the plaintiff "did not suffer the injury contemplated by the TCPA—that is, invasion of privacy and/or general nuisance"); *see also In re Matter of Groupme, Inc./Skype Commc'ns S.A.R.l Petition for Expedited Declaratory Ruling Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 29 F.C.C. Rcd. 3442, 3442 (2014) ("[O]ur goal is to make sure the TCPA is not interpreted to inhibit communications consumers may want and that do not

implicate the harms TCPA was designed to prevent."). Accordingly, the Complaint should also be dismissed under Rule 12(b)(6) for lack of prudential standing.

### C. This Court Lacks Personal Jurisdiction Over The Individual Defendants Ehrlichman, Marrelli, and Widjaja.

"The existence of general jurisdiction over the corporation…is not absolutely determinative of jurisdiction over its corporate officers." *Monarch Health Scis., Inc. v. Amazon Thunder, Inc.*, 2007 WL 3549434, at *2 (D. Utah Nov. 15, 2007) (unpublished). Rather, "a corporate officer's or director's activities must be evaluated as to the level of individual participation by the officer." *Id.* "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Here, Ehrlichman, Marrelli, and Widjaja are not domiciled in Utah. Ehrlichman is a resident of Washington, and Marrelli and Widjaja are residents of California. Compl. ¶¶ 4-6. Thus, the Court has no general jurisdiction over them.

As for specific jurisdiction, courts apply a three-part test: (1) the nonresident defendant "must have purposefully directed its activities at residents in the forum state"; (2) "the plaintiff's injuries must arise out of defendant's forum-related activities"; and (3) exercise of jurisdiction must not "offend traditional notions of fair play and substantial justice. *Shrader v. Biddinger*, 633 F.3d 1235, 1239-40 (10th Cir. 2011). "[The] plaintiff bears the burden of establishing personal jurisdiction over the defendant." *Hemisphere Mgmt., LLC v. ComputerEase Software, Inc.*, 2006 WL 3457212, at *1 (D. Utah Nov. 16, 2006) (unpublished). If the plaintiff fails to satisfy its burden, the complaint must be dismissed. *Id.* at *5 (dismissing where plaintiff "fail[ed] to satisfy [its] burden of establishing a prima facie case that jurisdiction exists.")

Under the first prong, the "out-of-state defendant must have 'purposefully directed' its activities at residents of the forum state." *VidAngel, Inc. v. Sullivan Entm't Grp., Inc.*, 2018 WL 3611068, at *4 (D. Utah July 27, 2018) (unpublished) (citing *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008)). The court considers whether the defendant (1)

committed an intentional act; (2) expressly aimed at the forum state; (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Id.* Here, Plaintiffs have not alleged any facts demonstrating that Defendants Ehrlichman, Marrelli, or Widjaja ***personally*** sent or directed others to send the text messages at issue. Other than conclusory statements, the only factual allegations provided in the Complaint about Defendant Ehrlichman are (1) he is a resident of King County, Washington (Compl. ¶ 4); and (2) he is one of GoSmith's Governors and GoSmith's CEO (Compl. ¶¶ 44, 54). Similarly, the only further factual allegations provided in the Complaint about Defendants Marrelli and Widjaja are (1) the foundational statements made in declarations that each has comprehensive personal knowledge of GoSmith's business model and internet operations generally; and (2) Defendant Widjaja registered GoSmith's website domain. *See* Compl. ¶¶ 31, 37-38. Plaintiffs have not pled any facts supporting an intentional act by any of the Individual Defendants, much less any act directed at Utah. *See, e.g.*, *Patrick v. N & G Capital LLC*, 2014 WL 3547831, at *3 (D. Utah July 17, 2014) (unpublished) (dismissing TCPA claim against individual corporate officers for lack of personal jurisdiction where plaintiff failed to show individual connection to forum state);

Thus, the claims against Defendants Ehrlichman, Marrelli, and Widjaja should be dismissed because the Court does not have personal jurisdiction over them.

### D.    Alternatively, Plaintiffs' Claims Against the Individual Defendants Should Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6).

A director or officer of a corporation generally is not personally liable for the corporation's torts unless they "participat[e] in the wrongful activity." *Krogh v. Nielsen*, 2012 WL 6115649, at *3 (D. Utah Dec. 10, 2012) (unpublished). *See also* Compl. ¶¶ 72-74. In the TCPA context, there is doubt as to whether corporate officers can be held liable for their companies' TCPA violations at all. *See, e.g.*, *City Select Auto Sales Inc. v. David Randall Assocs., Inc.*, 885 F.3d 154, 160 (3d Cir. 2018) (questioning whether common-law personal-participation liability is available against corporate officers under the TCPA); *KHS Corp. v. Singer Fin. Corp.*, 376 F. Supp. 3d 524, 530 (E.D. Pa. 2019)

(refusing to impose personal liability for corporate officers *even though* individual defendant "personally directed and participated in the sending of the unsolicited fax advertisements.").

Even if corporate officer liability is available, it requires "[s]pecific direction or sanction of, or active participation or cooperation in," the tort of the corporation to generate individual liability of an officer or director. *Ball v. Dillard*, 2000 WL 33710848, at *2 (D. Utah May 26, 2000) (unpublished) (quoting *Lobato v. Pay Less Drug Stores, Inc.*, 261 F.2d 406, 408 (10th Cir. 1958)); *see also City Select*, 885 F.3d at 160 (noting that if individual liability is available, corporate officers could only be personally liable for TCPA violations if they "had direct, personal participation in or personally authorized the conduct found to have violated the statute.") (citation omitted). In any event, "[c]orporate officers are generally not liable merely because the corporation has violated the law." *Mais v. Gulf Coast Collection Bureau, Inc.*, 2013 WL 1283885, at *4 (S.D. Fla. Mar. 27, 2013) (unpublished); *see also Savanna Grp., Inc. v. Trynex, Inc.*, 2013 WL 4734004, at *8 (N.D. Ill. Sept. 3, 2013) (unpublished) ("a corporate officer may not be liable for corporate acts based purely on his or her status in the corporation.").

In this case, Plaintiffs have failed to plead ***any*** facts showing that the individual corporate officer Defendants ("Individual Defendants") should be personally liable for the alleged unlawful text messages. For example, there are no alleged facts suggesting the Individual Defendants physically sent any of the text messages Plaintiffs allegedly received or that the phone number(s) from which the texts were sent belong to any of the Individual Defendants personally. Indeed, the Complaint contains no facts whatsoever tying the actual text messages to the Individual Defendants. *See generally*, Dkt. 2.

Nor do Plaintiffs plead ***facts*** showing that any of the Individual Defendants ***personally*** oversaw, knowingly authorized, or directed the sending of any of the text messages at issue here, much less that their actions rose to a level warranting the extraordinary imposition of personal liability. *See, e.g.*, *Mais v. Gulf Coast Collection Bureau, Inc.*, 2013 WL 1283885, at *4 (S.D. Fla. Mar. 27, 2013) (unpublished) ("[P]ersonal liability should be the exception rather than the rule and

should require something more than mere control and authority over policies and practices that happen to violate the law."). Instead, Plaintiffs merely conclude—without any factual support—that **because** Defendants Ehrlichman, Marrelli, and Widjaja are corporate officers of GoSmith they must have been "actual participants" and "directly involved". *See* Compl. ¶¶ 37-41; 43-45.

The only "facts" Plaintiffs have provided in this regard are (1) the GoSmith website URL is registered to Defendant Widjaja (Compl. ¶ 31); and (2) years old declarations from unrelated cases in which Defendants Marrelli and Widjaja indicate generically that, as co-founders of GoSmith they are "involved in nearly every facet of GoSmith's operations." (Compl. ¶¶ 37-38 and Exhibits C & D to the Compl.). But registering a website URL has nothing to do with sending text messages. And any assertion that generic foundational statements that, as co-founders, Marrelli and Widjaja are involved in nearly every facet of GoSmith's operations, evidences involvement here is just more of the same faulty reasoning that Marrelli and Widjaja should be personally liable for the text messages alleged merely **because** they are co-founders. Such conclusory allegations and unreasonable "leaps of logic" are insufficient to state a claim against officers in their individual capacities.[6]

Courts routinely grant motions to dismiss TCPA cases on this basis. *See, e.g., Cunningham v. Capital Advance Sols., LLC*, 2018 WL 6061405, at *5 (D.N.J. Nov. 20, 2018) (unpublished) (dismissing "generic, conclusory statements which presume that the Individuals Defendants personally 'authorized,' 'oversaw' and 'directed' the challenged telemarketing calls, based solely upon their status as corporate officials").[7]

---

[6] *See Ball*, 2000 WL 33710848, at *2 (unpublished) ("[M]erely being an officer or agent of a corporation does not render one personally liable for a tortious act of the corporation.") (citation omitted); *Karacand v. Edwards*, 53 F. Supp. 2d 1236, 1248 (D. Utah 1999) (refusing to credit plaintiff's attempt to "draw – without factual support – an unwarranted inference" because the allegations were merely conclusory); *Belstone Capital, LLC v. Bellstone Partners, LLC*, 2017 WL 1153111, at *5 (E.D. Cal. Mar. 28, 2017) (unpublished) (An unreasonable "leap in logic is the type of 'unwarranted inference [that] cannot defeat an otherwise proper motion to dismiss.'") (quoting *Schmier v. U.S. Court of Appeals for Ninth Circuit*, 279 F. 3d 817, 820 (9th Cir. 2002)).

[7] *See also Bank v. Simple Health Plans LLC*, 2019 WL 7878570, at *4-5 (E.D.N.Y. Dec. 12, 2019), (unpublished) R&R adopted, 2020 WL 606619 (E.D.N.Y. Feb. 7, 2020) (unpublished) (finding allegations that defendants violated TCPA insufficient to establish personal liability); *Zelma v. Penn*

Plaintiffs' allegation that the Individual Defendants were on notice that GoSmith's "telemarketing was problematic and illegal" is similarly irrelevant. *See* Compl. ¶ 46. Allegations in lawsuits are not facts. The mere allegation that GoSmith has been sued 10 times for TCPA violations—with no case citations and no adverse judgments—even if true, does not establish that GoSmith or its corporate officers engaged in any wrongdoing. Indeed, as of the date of this filing, Defendants are aware of at least thirteen separate lawsuits brought against them by Plaintiffs' counsel in this action, each with virtually identical complaints.[8]

The mere observation that other lawsuits have been filed—in and of itself—does not establish culpability. Nor does it make vague and generic allegations of wrongdoing any more plausible. In short, these allegations do not remedy Plaintiffs' failure to state a plausible claim based on facts. As such, Plaintiffs' claims against the Individual Defendants should be dismissed.

### E.    Plaintiffs Fail To State An ATDS Claim Under the TCPA.

To state a claim under Section 227(b) of the TCPA, Plaintiffs must plausibly allege that "(1) the defendant called [or texted] a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012). Plaintiffs fail to adequately plead these elements for numerous reasons, discussed below.

---

*LLC*, 2020 WL 278763, at *4 (D.N.J. Jan. 17, 2020) (unpublished) (dismissing TCPA claim as to corporate officers where complaint lacked specific facts establishing personal liability).

[8] *See* n.1, *supra*; *see also Nieblas et. al. v. Porch.com Inc. et. al.*, No. 4:20-cv-00171 (D. Az.); *Harrison et. al. v. Porch.com Inc. et. al.*, No. 2:20-cv-00266 (D. Ut.); *Dawson et. al. v. Porch.com Inc. et. al.*, No. 2:20-cv-00604 (W.D. Wash.); *Beyer et. al. v. Porch.com Inc. et. al.*, No. 1:20-cv-00051 (D. Mont.); *Chennette et. al. v. Porch.com Inc. et. al.*, No. 1:20-cv-00201 (D. Id.); *Syms et. al. v. Porch.com Inc. et. al.*, No. 2:20-cv-00162 (E.D. Wash.); *Vawter et. al. v. Porch.com Inc. et. al.*, No. 2:20-cv-00752 (D. Nv.); *Pearson et. al. v. Porch.com Inc. et. al.*, No. 3:20-cv-00697 (D. Or.); *Dowells et. al. v. Porch.com Inc. et. al.*, No. 1:20-cv-00192 (D. Hi.); *Longo et. al. v. Porch.com Inc. et. al.*, No. 3:20-cv-00585 (D. Con.); and *Clements et. al. v. Porch et. al.*, No. 1:20-cv-00003 (D. Ak.).

### 1.    Employment Texts Do Not Constitute Advertisements or Telemarketing Under The TCPA.

Plaintiffs improperly characterize the text messages as "telemarketing," *see* Compl. at Intro and ¶ 35.  But recruitment or employment texts, like those alleged in the Complaint, do not constitute "advertisements" or "telemarketing" as a matter of law, because an employment offer does not pertain to the commercial availability, quality, purchase, rental, or investment in any property, goods or services.  *See* 47 C.F.R. § 64.1200(f)(12) (telemarketing "means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person"); § 64.1200(f)(1) (advertisement "means any material advertising the commercial availability or quality of any property, goods, or services").  This basic principle of TCPA law is well-established.  *See Salmon v. CRST Expedited, Inc.*, 2015 WL 1395237, at *5 (N.D. Okla. Mar. 25, 2015) (unpublished) (call offering free job training and employment as a truck driver was an employment call, not an advertisement or solicitation).[9]

---

[9] *See, also*, *Gerrard v. Acara Solutions Inc.*, 2020 WL 3525949, at *3 (W.D.N.Y. Jun. 30, 2020) (unpublished) (text messages regarding an employment opportunity "do not constitute advertisements or telemarketing [under] the TCPA's implementing regulations."); *Reardon v. Uber Technologies, Inc.*, 115 F. Supp. 3d 1090, 1096 (N.D. Cal. 2015) (finding texts akin to recruiting, rather than advertising, where "texts . . . were sent to recruit drivers, not to promote the commercial availability of Uber's transportation services, even if Uber's ability to successfully recruit drivers is related to its commercial interest in providing more rides to its customers."); *Friedman v. Torchmark Corp.*, 2013 WL 1629084, at *4 (S.D. Cal. Apr. 16, 2013) (unpublished) ("[M]essage was not aimed at encouraging Plaintiff to engage in future commercial transactions with Defendant to purchase its goods" but rather "informed Plaintiff about a recruiting webinar that could have resulted in an opportunity to sell Defendant's goods" and was "akin to an offer of employment" ); *Lutz Appellate Svcs., Inc. v. Curry*, 859 F. Supp. 180, 181-82 (E.D. Pa. 1994) ("A company's advertisement of available job opportunities" is not advertisement of "'the commercial availability or quality of any property, goods or services' within the ordinary meaning of those words of the Act."); *Dolemba v. Illinois Farmers Ins. Co.*, 2015 WL 4727331, at *4 (N.D. Ill. Aug. 10, 2015) (unpublished) (finding that automated phone call encouraging plaintiff to attend town hall offering a business opportunity to sell insurance products was a "business opportunity," not advertising, telemarketing, or a "dual purpose" message); *Payton v. Kale Realty, LLC*, 164 F. Supp. 3d 1050, 1062 (N.D. Ill. 2016) (finding message sent by realty firm stating the firm was a good place to work and providing information on how to learn more was an offer of employment and not an advertisement or solicitation); *Dolemba v. Kelly Svcs., Inc.*, 2017 WL 429572, at *4 (N.D. Ill. Aug. 10, 2015) (unpublished) (calls soliciting individuals for employment as machine operators

Here, the texts unequivocally relate to job opportunities, not advertisements or telemarketing. The texts clearly respond to Plaintiffs' requests to call them about job opportunities. *See*, *e.g.*, Compl. ¶ 21. Since the text messages alleged are job opportunities, only prior express consent is required (if the texts were even sent with an ATDS). *See* 47 U.S.C. § 227(b)(1)(A)(iii); *Reardon*, 115 F. Supp. 3d at 1097.

It does not matter that Plaintiffs may have to pay credits to access the full job location, because job opportunity text messages like those alleged in the complaint are not marketing, *even if* "the business opportunity requires the new agent to acquire goods and services and expend money to [sic] or for the benefit of" [the defendant]." *Dolemba*, *supra*, 2015 WL 4727331, *4 (unpublished) (automated call inviting recipient to attend a "town hall" regarding a business opportunity was not marketing even though the opportunity would have required plaintiff "to acquire goods and services and expend money"). Thus, these messages are, in every sense, job opportunities, not marketing under the TCPA.[10]

### 2.    Plaintiffs Provided Consent By Publishing Their Phone Numbers Online Expressly Inviting Calls For Work Opportunities.

As noted above, Congress enacted the TCPA to protect consumer privacy interests and to protect consumers from **unwanted** calls. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (emphasis added). However, it did not intend the TCPA to be a barrier to normal, expected, and desired business communications. *See In re Matter of Groupme*, 29 F.C.C. Rcd. at 3444 (citing H.R. Rep. 102-317 at 17 (1991) ("[T]he restriction . . . does not apply when the called party has provided the telephone number of such a line to the caller for use in **normal business**

---

were not advertisements or marketing calls)

[10] Relatedly, the texts concern an ongoing business transaction, whether viewed as initiated by the homeowner offering the opportunity or the plaintiff who advertised their phone in search of job opportunity responses, and thus do not constitute advertisements or telemarketing. *See An Phan v. Agoda Co. Pte. Ltd.*, 351 F. Supp. 3d 1257, 1266 (N.D. Cal. 2018) (collecting cases); *In re Rules & Regs. Implementing the Tel. Consum. Prot. Act of 1991*, 21 FCC Rcd. 3787, 3812 ¶ 49 (Apr. 6, 2006) (message is not advertising if its "purpose is to facilitate, complete or confirm a commercial transaction").

*communications*") (emphasis added)).

Under the TCPA, "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." *Van Patten,* 847 F.3d at 1044 (citation omitted) (finding plaintiff's voluntary provision of his number constituted prior express consent to be contacted even after plaintiff terminated his membership); *see also In the Matter of Rules and Regulations Implementing the Tel. Consumer Protec. Act of 1991*, 7 F.C.C. Rcd. 8752 (Oct. 16, 1992) ("[T]elemarketers will *not* violate our rules by calling a number which was provided as one at which the called party wishes to be reached.") (emphasis added); *Sartori v. Susan C. Little & Assocs., P.A.*, 2013 WL 11792151, at *13 (D.N.M. June 27, 2013) (unpublished), report and recommendation adopted, 2013 WL 4401370 (D.N.M. July 30, 2013) (unpublished), *aff'd*, 571 F. App'x 677 (10th Cir. 2014) ("[T]he restrictions on calls to emergency lines, pagers, etc. does not apply when the called party provided the telephone number of such a line to the caller for use in normal business communications."); *Pinkard v. Wal-Mart Stores, Inc.*, 2012 WL 5511039, at *5 (N.D. Ala. Nov. 9, 2012) (unpublished) ("distributing one's telephone number is an invitation to be called"); *Moskowitz v. Am. Savings Bank, F.S.B.*, 2020 WL 61576, at *10 (D. Hi. Jan. 6, 2020) (unpublished) (prior express consent satisfied when the party provides its phone number for normal business communications); *Reardon*, 115 F. Supp. 3d at 1099 ("To 'provide' means 'to make (something) available' or 'to supply (something that is wanted or needed).'") (citing MERRIAM–WEBSTER'S COLLEGIATE DICTIONARY 1001 (11th ed. 2012)).

The case *Edelsberg v. Vroom, Inc.*, 2018 WL 1509135 (S.D. Fla. Mar. 27, 2018) (unpublished) is squarely on point. There, the plaintiff voluntarily provided his phone number in connection with an online ad offering his car for sale, encouraging third parties to contact him with offers. *Id.* at *2. In response to his ad, defendant sent him an automated text that read, "Hi Mark, I am Scott at Vroom. I saw you listed your Prius online & can make an offer but need you to fill out a few more details (takes 4 min) http://go.vroom.com/syc/6C9179. Text STOP to Quit." *Id.*

The court held there was no TCPA violation because plaintiff provided express consent for Vroom to contact him by including his mobile number in his online advertisement with instructions to contact him for more information.  *Id.* at *8.  Likewise, in *Mey v. Pep Boys-Manny, Moe, & Jack*, plaintiff's son placed his telephone number on the internet in connection with an ad to sell his vehicle.  228 W. Va. 48, 54-56 (2011).  The court found no TCPA liability for an automated call placed in response to the ad, because by posting his phone number on the internet and inviting third parties to contact him at that number, plaintiff had provided third parties with express invitation to contact him.  *Id.*

The same is true here.  Plaintiffs received exactly what they requested—calls regarding potential job opportunities.  The messages alleged were precisely the type of "normal, expected, and desired business communications" Congress did not intend to disturb by enacting the TCPA.  *See*, *supra*, *In re Matter of GroupMe*, 29 F.C.C. Rcd. at 3444.  Plaintiffs provided their prior express consent to be contacted; thus Plaintiffs' TCPA claim fails to state a claim and should be dismissed.[11]

### F.   Plaintiffs Fail to Plead A Do-Not-Call Violation.

The TCPA prohibits initiating any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do-Not-Call Registry.  47 C.F.R. § 64.1200(c)(2).  To state a DNC claim, the plaintiff must receive ***more than one*** unlawful telephone solicitation in a 12-month period.  47 U.S.C. § 227(c)(5).

---

[11] *See Salmon*, 2015 WL 1395237, at *5 (unpublished) (dismissing complaint where call advising of employment opportunities was "purely informational" and not subject to TCPA liability); *Reardon*, 115 F. Supp. 3d at 1098-99 (granting motion to dismiss, in relevant part, where employment text messages were not telemarketing and plaintiffs provided consent to be called by voluntarily providing their telephone numbers); *Kelly Svcs., Inc.*, 2017 WL 429572, at *4 (unpublished) (same); *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 724-27 (7th Cir. 2011) (publication of plaintiff's phone number on its website next to the words "Contact Us" could constitute prior express invitation or permission to receive fax advertisements relating to the business); *see also Pinkard*, 2012 WL 5511039, at *5 (unpublished) (granting motion to dismiss on account of consent because "distributing one's telephone number is an invitation to be called").

Here, despite cherry-picking text messages to include in the Complaint, Plaintiffs have still failed to plead a DNC violation because (1) Plaintiffs' phone numbers are business numbers and do not qualify for protection under the DNC regulations; (2) the Complaint does not allege facts demonstrating that even a single Plaintiff received ***more than one*** violative text message in a 12-month period after registering their phone number on the National Do-Not-Call Registry; (3) the Complaint does not allege that each Plaintiff, respectively, was the one to register their number on the DNC; and (4) the alleged text messages are not "telephone solicitations".

***First***, "the national [DNC] rules do not prohibit calls to business numbers." *Mattson v. Quicken Loans Inc.*, 2019 WL 7630856, at *4 (D. Or. Nov. 7, 2019) (unpublished) (citing *In re Rules and Regulations Implementing the TCPA of* 1991, 18 FCC Rcd. 14014, 14039-40 (July 3, 2003)); *Mattson v. New Penn Financial, LLC*, 2019 WL 7633159, at *4 (D. Or. Nov. 7, 2019) (unpublished) (same).[12]   In particular, phone numbers that Plaintiffs "hold out" to the general public as business lines are not "residential" for purposes of the TCPA. *Bank v. Indep. Energy Grp. LLC*, 2015 WL 4488070, at *2 (E.D.N.Y. July 23, 2015) (unpublished). Here, Plaintiffs readily admit that they hold out their phone numbers to the public as business numbers where they should be contacted for potential business opportunities. Compl. ¶ 11 (admitting that the phone numbers at issue are associated with Plaintiffs' businesses); ¶¶ 13-15, 17, 24-25 (admitting Plaintiffs are "home improvement contractors"); Haule Decl. ¶ 8 and Ex. 7. Thus, Plaintiffs' DNC claims fail as a matter of law.

***Second,*** the Complaint does not allege that any Plaintiff received two actionable text messages within a twelve-month period after registering their phone number on the National Do-Not-Call Registry. Indeed, the only text message alleged in the Complaint is the ***single*** message

---

[12] *See also In re Rules and Regulations Implementing the TCPA of 1991*, 23 FCC Rcd. 9779, 9785 (June 17, 2008) ("[T]he National D0-Not-Call Registry applies to 'residential subscribers' and does not preclude calls to businesses."); *Southwell v. Mortg. Inv'rs Corp. of Ohio*, 2014 WL 3956699, at *4 (W.D. Wash. Aug. 12, 2014) (unpublished) (denying plaintiff's motion for class certification because, *inter alia*, the proposed DNC class list did not exclude phone numbers that were "assigned to a business").

Plaintiff Dunn allegedly received.  *See* Compl. ¶ 21.[13]  Therefore, Dunn has not alleged that he received **more than one** violative text message within a 12-month period, so Dunn does not allege a single DNC claim.

Furthermore, "Exhibit A" to the Complaint also does not demonstrate a DNC violation as to any of the other Plaintiffs.  To begin, "Exhibit A" lacks any foundation or facts to support the number of purported text messages for each Plaintiff.  Instead of providing the actual number of text messages alleged by each Plaintiff, the chart relies on "the average Plaintiff" and concedes, as it must, that "the exact number of messages varies by Plaintiff."  Plaintiffs *guess* that they received two texts per week but allege no *facts*.  Since Plaintiffs brought this suit for the recovery of text messages that allegedly invaded their privacy, presumably they know how many texts they received and when.  The guestimates in Exhibit A are plainly insufficient to show that each Plaintiff received two violative text messages in a twelve-month period.[14]  *See Baltazar v. Premium Capital Funding*, 2011 WL 3841450, at *3 (D. Utah Aug. 26, 2011) (unpublished) (dismissing complaint where "[p]laintiffs' conclusory allegations and hypothetical surmisings fail[ed] to meet [the pleading] standard."); *VDARE Found. v. City of Colorado Springs*, 2020 WL

---

[13] Plaintiff includes other text message screenshots, *see* Compl. ¶¶ 24-25, but these do **not** pertain to any Plaintiffs to this action.  Rather, they are copied from another complaint filed by other Plaintiffs.  *See Cain et. al. v. Porch.com Inc. et. al.*, No. 2:20-cv-00697-BLF (N.D. Cal.), Dkt. 1 ¶ 12; Dkt. 25 ¶¶ 22, 25-26 (identifying the messages in paragraph 24 as being sent to parties to the *Cain* action).

[14] Plaintiffs' counsel has also submitted a declaration indicating that they obtained the data in the columns for "messages started" and "unsubscribed on" by accessing and retrieving non-public GoSmith "data that loads behind the scenes" and then crawling the "Handler.ashx" portion of GoSmith's network and then proceed to speculate on the meaning of that data.  *See* Compl. ¶ 50.b.v; ECF No. 2-2 (Declaration of Thomas Alvord).  Plaintiffs' guesswork is then used to justify a whopping $33 million claim for damages.  Compl. ¶¶ 105-106; Ex. A.  For these reasons, Exhibit A should be stricken.  *See* Fed. R. Civ. P. 12(f) ("The court may strike from a pleading … any redundant, immaterial, impertinent, or scandalous matter"); *see also XY Skin Care & Cosmetics, LLC v. Hugo Boss USA, Inc.*, 2009 WL 2382998, at *2 (D. Ariz. Aug. 4, 2009) (unpublished); *Verco Decking, Inc. v. Consol. Sys., Inc.*, 2013 WL 6844106, at *6 (D. Ariz. Dec. 23, 2013) (unpublished).

1482622, at *11 (D. Colo. Mar. 27, 2020) (unpublished) (dismissing where allegations were speculative and "based on hypothetical events" which were "insufficient to support a plausible claim for relief"); *Canter & Assocs., LLC v. Teachscape, Inc.*, 2007 WL 4365480, at *2 (N.D. Cal. Dec. 12, 2007) (unpublished) (a guess is insufficient to state a cognizable claim); *Operational Risk Mgmt. LLC v. Union Bank, N.A.*, 2012 WL 1710893, at *2 (N.D. Cal. May 15, 2012) (unpublished) (hypothetical allegations remain at the speculative level, which are insufficient for pleading purposes).

**Third**, the Complaint alleges only that the phone numbers "were registered" on the National DNC Registry. *See* Compl. ¶ 11 & Ex. A. But prior registrations by a different subscriber are not sufficient; each Plaintiff, respectively, must allege that they were the one to register the phone number at issue. *See* 47 C.F.R. §64.1200(c)(2) (proscribing a telephone solicitations to a "residential telephone *subscriber who has registered his or her* telephone number" on the National DNC Registry) (emphasis added).

**Fourth**, the text messages at issue are job opportunities, not "telephone solicitations." Under the DNC rules, a "telephone solicitation" is "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(14). As discussed above, offering someone a job is **not** encouraging the purchase or rental of, or investment in, property goods, or services. *See Murphy v. DCI Biologicals Orlando, LLC*, 2013 WL 6865772, at *10 (M.D. Fla. Dec. 31, 2013) (unpublished), *aff'd*, 797 F.3d 1302 (11th Cir. 2015) (text message offering to pay plaintiff for making another blood donation **not** a "telephone solicitation" for purposes of 47 U.S.C. § 227(c)); *Salmon v. CRST Expedited, Inc.*, 2015 WL 1395237, at *5 (N.D. Okla. Mar. 25, 2015) (unpublished) (recruiting call advising of employment opportunities was not a telephone solicitation); *Orea v. Nielsen Audio, Inc.*, 2015 WL 1885936 at *2-3 (N.D. Cal. Apr. 24, 2015) (unpublished) (calls offering to compensate recipient for his participation in a survey not telephone solicitations); *Hulsey v. Peddle, LLC*, 2017 WL 8180583, at *3 (C.D. Cal. Oct. 23,

2017) (unpublished) (call made in response to Plaintiff's request for offers to purchase her car not a telephone solicitation); *Freyja v. Dun & Bradstreet, Inc.*, 2015 WL 6163590, at *2 (C.D. Cal. Oct. 14, 2015) (unpublished) (no telephone solicitation where "call was made for the purpose of acquiring information about the commercial services provided by Plaintiff"). Therefore, Plaintiffs' DNC claims should be dismissed.

## IV.    **CONCLUSION**

For these reasons, Defendant respectfully requests that the Court enter an order dismissing the Complaint in its entirety and with prejudice.[15]

Dated: July 15, 2020                                ALLEN, MITCHELL & ALLEN PLLC


                                                    By: */s/ Eric Allen*
                                                    Eric S. Allen
                                                    Attorneys for Defendants
                                                    PORCH.COM INC., GOSMITH INC.,
                                                    MATTHEW EHRLICHMAN, BRENTON
                                                    MARRELLI, AND DARWIN WIDJAJA

---

[15] Leave to amend is properly denied where amendment would be futile. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991)). Amendment is futile where, as here, Plaintiffs consented to be called. *See e.g. v. Los Angeles Lakers, Inc.*, 2013 WL 1719035, at *4 (C.D. Cal. Apr. 18, 2013) (unpublished); *MacKinnon v. Hof's Hut Restaurants, Inc.*, 2017 WL 5754308, at *3 (E.D. Cal. Nov. 28, 2017) (unpublished) (same); *Pinkard*, 2012 WL 5511039 at *7 (unpublished) (same). Thus, Plaintiffs' Complaint should be dismissed with prejudice.

**CERTIFICATE OF SERVICE**

I certify that on the 15th day of July, 2020, I served a true and correct copy of the foregoing Motion to Dismiss to the following by CM/ECF and e-mail.

LawHQ
Rebecca Evans          E-mail: Rebecca@lawhq.com
Thomas Alvord          E-mail: thomas@lawhq.com
Mitchell West           E-mail: mitchellwest@lawhq.com

*Attorneys for Plaintiffs*

Date: July 15, 2020

/s/ *Eric Allen*
Eric Allen
Attorney for Defendants

23